United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. This is Judge Wilson in Tampa. Judge Rosenbaum is in Fort and we have four appeals that are scheduled for oral argument this morning. I see that counsel are ready for the first appeal. Counsel, I would advise you that we've read the briefs, we've examined the records, the records in the case that will assist you in narrowing your arguments within the time that you have available for your arguments this morning. And speaking of the time, if you look at the screen on your monitor, it will let you know when your time to argue has expired and it will provide you with a warning when your time to argue is about to expire. So it appears that we're ready to proceed with the first argument. First case is Reginald Eugene Grimes versus Officer Richard Rott and others. Daniel Ben Ezra is here for the appellates. Daniel Marset is here for the appellees. And Mr. Ezra, you may begin your argument. Thank you, Your Honor. Gil Ben Ezra on behalf of Reginald Eugene Grimes. May it please the court. Grimes appeals the district court's judgment, notwithstanding verdict, which overturned the jury's finding below that the appellees violated Grimes' Fourth Amendment rights. The JNOV must be reversed for at least the following reasons. As the appellees conceived, the court used the wrong standard when it held that the appellees were entitled to qualified immunity because no reasonable jury could find that the appellees used more than the minimum force. Additionally, the court disregarded Grimes' testimony regarding the beating itself, which he testified he was beaten for two to three minutes after he was beaten. The court also made inferences in favor of the appellees from medical records and evidence, which should have been made in favor of Grimes because Grimes prevailed the trial. Alternatively, to the extent that this court would otherwise affirm the JNOV based on a lack of evidence in the record corroborating Grimes' testimony that he can suffer continuous injuries, then Grimes is entitled to a new trial because the district court's JNOV hinged on its finding that Grimes suffered only de minimis injuries, which the court used as a proxy for its finding that the appellees could not have used more than de minimis force. However, Grimes requested medical treatment for his injuries for up to a year and a half following the beating, and those requests, which Grimes had attempted to introduce, were erroneously excluded as hearsay even though they were admissible under federal rule of evidence 8034. With your Honor's permission, I'd like to turn to the standards that the court used in order to grant the appellees a judgment notwithstanding verdict. Specifically, this court has long held since at least 2002 that an officer violates a arrestee's Fourth Amendment rights when he or she uses any gratuitous force against an and is compliant. Grimes testified below, and the jury was entitled to credit his testimony, that he was beaten in the two to three minutes after he had been handcuffed by Officer Rott and a group of other federal officers that were standing around him. Because there was no video evidence that wholly and utterly discredited Grimes' testimony, Grimes' testimony must have been given credit by the district court, and the jury could have credited it. Therefore, because any force used against Grimes would violate Grimes' clearly established Fourth Amendment rights, the officers who used that force or the officers who failed to intervene to prevent their colleagues from using that force were not entitled to qualified immunity. Additionally, there is significant evidence for the jury to find against each of the appellees, starting with Rott. As I noted, Grimes testified that Rott handcuffed him and then struck him, Grimes, over the head with a metal object resembling a gun or a weapon, sorry. He then testified that numerous officers surrounding him joined in with Rott and began beating him. There are at least two categories of evidence that place appellees Franks, Hearn, and Talashe in those group of officers. One, Franks, Talashe, and Hearn admitted that they were at the scene of the arrest in Grimes' immediate vicinity during the time period in which the jury found Grimes was being beaten. Specifically, Franks and Talashe testified that they were about a block and a half from the location where Grimes was arrested when they heard a crash, then drove to the crash, and were at the scene of the arrest in Grimes' vicinity in under a minute following the crash. The crash that they claimed that they heard from a block and a half was their team leader, James Hart's vehicle crashing into Grimes' vehicle. Hart testified that immediately after that impact, he exited, that is, Hart exited his own vehicle, walked over, and handcuffed Grimes. Now, that conflicts with Grimes' testimony, but nevertheless places Hart's vehicle at the scene of Grimes' arrest at the times Grimes is being handcuffed. Similarly, Hart's passenger, Hearn, who's an appellee in this case, claimed that he exited the vehicle also at the time of impact, immediately after the time of impact. Hearn testified that he then proceeded to clear Grimes' vehicle, walked back around Hart's vehicle, which took just over a minute, and found Franks and Talashe standing around Mr. Grimes. Therefore, all of the appellees are standing around Grimes at the time that Grimes testified he was being beaten. Because the district court needed to have credited that testimony that Grimes was being beaten for two to three minutes, the jury could have found that the appellees were also at the scene of the arrest, and at least not intervening to prevent Grimes from being beaten during that time period. And that is the exact rule that this court expressed in Velazquez v. Hernandez, where two officers who were alleged to have used excessive force to beat the plaintiff in that case, denied that a beating took place, but argued in the alternative that if a beating had taken place, that the plaintiff could not prove which of them administered the beating, if not both. And the court in that case held that if the jury found a beating had occurred, then the defendants in that case's admission, having been present at the arrest during the scene of the beating, was sufficient for the jury to find that those defendants at least did not intervene to prevent the beating. The same is true here. Additionally... Did you try the case? Yes. And am I correct, the verdict is 4,000 against each officer? Correct. And was that compensatory damages? Those were punitive damages, Your Honor. Punitive. And how much no compensatory? So the, Your Honor, the jury instructions... So there were no compensatory damages. The jury instructions with respect to damages instructed the jury to engage in a two-part analysis. The first was whether Grimes incurred more than minimal physical injury. The jury instructions stated that if there was a minimal... The jury was to stop and award just $1. The jury instructions stated that if the jury did, in fact, find more than minimal physical injury, that it would continue to compensatory and punitive damages. So the jury is continuing to pass that point. Sorry, Your Honor. Okay. That answered my question. I thought that's what it was, but I just wanted to make sure. And all four of these were federal officers. Is that correct? There was a task force here. Were all four of these federal or were they couple of them not DEA or what have you? So all four appellees at the time that they were acting were acting as deputized federal agents. Oh, I see. So they were part of a DEA task force, which was led by a deputy. Got it. Thank you. Were there any medical bills sustained by Mr. Grimes that were put into evidence? There was a medical record from his time at the hospital. So Grimes testified that he was beaten, taken to DEA headquarters, and then the DEA attempted to process him into Palm Beach County Prison. Palm Beach County Prison, Grimes testified, refused to admit Grimes because of his apparent head injuries. Grimes put into evidence a record showing that he had been refused admission into Palm Beach County Prison because, and the record stated, Grimes appeared to have head injuries. Grimes then went to Wellington Regional Medical Hospital where there was a, where he went to a certain treatment, a certain test. The medical hospital determined that Grimes's injuries were not acute, but nevertheless confirmed that Grimes had, had bruising and swelling on his face, back and neck. But did he have any medical bills? Did he come out of pocket at all for medical bills? I'm trying to figure out whether there's no compensatory damages. This is an unusual case. $4,000 as to each officer for punitive damages normally punitive damages are usually a lot more than that because punitive means to punish, it's intended to punish. And so $4,000, not consistent with punishment, but that's not an issue in the case. This is a very unusual case. Your Honor, the answer to the question is Grimes has been incarcerated since, and so he's not incurred any medical bills. He has, he has received medical treatment since. And if I would just turn to the issue of compensatory damages, the instructions for compensatory damages, again, after the jury concluded that Grimes suffered more than a minimal amount of physical injury, the instructions were that the jury could award zero damage, should award $0 if it could not quantify, or if it could not, if it could not quantify Grimes's damages or alternatively, if Grimes's damages had no monetary value. So the jury could have come to that conclusion when it awards zero compensatory damages and still awarded the $4,000 punitive damages based on the testimony that Grimes was beaten for two to three minutes while he was compliant. And as Judge Wilson says, that's not an issue on appeal. We're just hearing a JNLB, right? Correct, Your Honor. You just want the verdict reinstated, whatever it is. Correct, Your Honor. Okay. And, and I'm just curious, did the district court appoint you to try the case or were you already in the case? The district court has a panel which solicits pro bono counsel, and we volunteered, me and myself and co-counsel volunteered as part of that. I'm just looking at this big office you're in. It's pretty sophisticated. And I thought, well, maybe he's doing this pro bono. So I just commend you for that. Thank you, Your Honor. You tried it pro bono. Yes, Your Honor. Okay. Uh, unless Your Honors have any questions, I'll reserve the rest of my time for rebuttal. All right. You've reserved some time. Thank you, Mr. Ben-Ezra. We'll hear from Mr. Marcet. Good morning, Your Honors. May it please the court, Daniel Marcet on behalf of the appellees. The district court in this case correctly entered judgment as a matter of law because for two reasons. First, as to all defendants, the objective evidence discredited the plaintiff's testimony. And second, as to any defendant other than Rott, there was insufficient evidence from which a jury could have found that they did or did not do something that the law required. I'd like to start. They were present. They were present during the meeting. They pretty much admitted that. They changed their story and admitted that in their deposition, right? They admitted that they were present. No, I'm not sure I understand. There's no officer admitted to being present at any meeting. They admitted to being present shortly after he was arrested. They admitted being there. They just claimed they got there after he was handcuffed. Exactly right, Judge. And if I can, if we can drill down. And while we're on that, but the problem is he says he wasn't beaten until after he was handcuffed. I mean, the case is riddled with inconsistencies on the timeline. You're correct. And I'd like to start exactly there. So let's take, as we must, let's credit crime's testimony and draw all reasonable inferences in that he wasn't beaten until after he was handcuffed. And it took some time for Rock to get out of his car, go over there and handcuff him. Exactly. So, so Grimes testifies that he, that there's no high speed chase, that he stops his car of his own accord, gets out and lays down on the pavement face down with his hands stretched above his head. Officer Rock comes, grabs his left hand, his right hand. And I will stop you right there. What's very interesting is the Officer Rock doesn't really contradict that he was totally cooperative. I mean, I'm about stopping the car is one thing. But once he did stop and get out, even Officer Rock says he went over and put his hands down, right? No office. Officer Rock does not say that he did not resist. Officer Rock says when he arrived, Grimes was already handcuffed, seated on the curb. Officer Hart says that when he arrived and handcuffed Grimes, Grimes did not resist. But Officer Rock says that he arrived after Grimes was already handcuffed, seated on the curb, and he concedes that Grimes was cordial. Okay, I thought Rock was the one that handcuffed him, according to Grimes. According to Grimes, yes. Okay, but so we have to take it according to Grimes that Rock handcuffed him, right? I agree. I thought you were asking what Officer Rock said. I was. You're right. I'm just trying to understand. We have to take it that Rock was the handcuffer. Absolutely. So continuing the timeline. That means under the light most favorable, if Rock's the handcuffer, Hart's already there. Well, so Judge, no. And so that's why we need to take the plaintiff's testimony, and that's what I'm trying to walk us through. So according to Grimes, he's face down on the ground. He's handcuffed. Officer Rock allegedly pistol whips him, and then other officers join in beating him. While he's being beaten, he hears the car crash. That's when Hart arrives with her in the passenger seat. So the beating is already underway, according to Grimes, when the crash happens. And the vehicle's knocked up 20 yards. Grimes says he couldn't see it, but he could hear it because he was face down being beaten. There's no testimony. I've scoured Grimes' testimony. There's no testimony as to whether, where that happened within this two to three minute beating. There's no testimony that more officers joined in after the crash or that the beating continued. So that's the first. Let me tell you part of the problem with this. I don't think when you go look at the whole record, you just take Grimes' testimony until we go through it. We take Grimes and the officers, because the officers actually placed themselves there earlier than Grimes does. Sure. I think that's fair. Hart says, I got there. And if Hart got there earlier, Hearn got there earlier. Hearn's in Hart's car. Sure. So let's say that- I don't think you just say, oh, here's Mr. Grimes. And then we go and take all this other testimony. So there's no way that can happen. You got these officers. They don't even agree among themselves when they got there. Judge, this was being tried five years after the event. I know that's- I'm not saying it's wrong with them doing that. I'm just saying it's a whole mess of inconsistencies on everybody's part as to who got where when. That's the problem. No, and absolutely. And not to mention the officers who testified at the end, that they were actually the ones who did the arrest and that he did- That's what I'm saying. It's a mishmash. Absolutely. Absolutely. There's no consistent story you can put together. You can't take Hart and make it consistent. You can't take Frank's and what they say is different. You got whether Hart crashes his car in there, where he doesn't crash his car in there. I mean, it's just- nothing is consistent between anybody who testified. Because like you said, it's five years later. No, and you're exactly right, Judge. But I think the law is still clear that the plaintiff bears the burden of providing sufficient evidence from which the jury, remaining focused on the- But the problem isn't- I mean, Judge Hall, obviously, if I'm misinterpreting what you're saying, please let me know. But the problem for your clients is that the law requires us to look at the evidence in the light most favorable to the verdict. And so we can't just look at what Mr. Grimes said. We can't just look at what the officer said. We have to look at all of it. And we have to take all of the evidence that is most favorable to the verdict, whatever the source, and determine whether there's enough there to support the verdict. And it seems like there is. Sure, Judge. So let's- let's leave off in the timeline where I was just speaking with Judge Hall. And I agree with your statement of the standard. So let's say that the jury could have synthesized the testimony here and found that Hart arrived prior to the handcuffing. So the- Hearn, it's undisputed, arrived with Hart. But what's also undisputed is as in this court's precedent in Ensley versus Soper, Hearn had a job to do. And so as the court in Ensley found where there was a beating occurring nearby and one officer undisputably did not intervene, the court found, well, that officer had a job to do. He was arresting someone else nearby. And therefore, as a matter of law, he was reasonable in continuing what he was doing, whether or not he was aware of the beating occurring nearby. In this case, Hearn is the Hearn testified that his job, they didn't know if there was someone else in the vehicle, his job is to secure the passenger side of the vehicle. So he remained in a low crouch on his side of the vehicle with his firearm pointed at the passenger side to make sure no one else came out of the passenger side and put his other officers in jeopardy. I know what you're going to say. And so he didn't go around the car to the other side. But he says it took him a minute and 15 seconds. And the beating in the light most favorable to Grimes went on three minutes. So he's still able to be there at the time of the beating. He says, Oh, I had another job to do. I had to check out the car to make nobody's there. I've been through this whole record. Didn't he say and it took me about a minute, 15 seconds to do that. That's what he says. And then I came around. And by the time I came around, he was already handcuffed sitting on the curb. Is that about right? You're exactly right. But see, there's two problems with that. One, the beating last longer that period of time to when he comes over there. He's just well, is he handcuffed on the ground? He's still there at the time where he's just been handcuffed and Grimes claims the beating was active. You see, it's just a myth. It's hard to extricate anybody out of this, particularly because the officers also don't have a good timeline. That's the problem here. Which is why, you know, did you try it? I did not judge. Okay. But I did read every page of the transcript. I was just curious. It seems like the jury did a pretty good job of sifting through all of this testimony, much of which was inconsistent because they found that Grimes failed to prove his claims against four of the officers, Baker, Parent, Santana, Sermons, and Vizzo. And just found that he proved his claims with regard to the other four, Rott, Kern, Kalachick, and Grimes. Did a pretty good job of sifting through the evidence in this case. Well, Judge, I'm sure they tried to sift through the evidence and they did make a decision that some officers were liable and some weren't. But with respect to Rott, there's not really a basis to distinguish between the remaining officers. And what the plaintiffs point to primarily in their reply brief is the Rott report. I would point to two things about the Rott report. First, the only thing that the Rott report says is that defendants Franks, Hart, and Talashe were, quote, other officers. It just identifies them as other officers, does not say that they did anything, does not say when they arrived, and does not say what they did, that they were there at the time of the handcuffing, that they helped take any evidence into custody. The second thing about- Counsel, I'm sorry. When you're talking about Rott, why isn't it enough just that Grimes himself testified that it was Rott who handcuffed him and started beating him? Why isn't that enough to support the verdict when we have to look at the evidence in the light most favorable to the verdict? Oh, Judge, I apologize. I was not talking about Officer Rott. I was explaining how the plaintiffs are justifying the distinction between Franks, Hart, and Talashe and the other officers who were not found liable. And their primary argument is that those officers are not identified in Rott's report, and therefore crediting the plaintiff's testimony that Rott beat him, the jury then could have seized on that report and said, well, this must be true, that these were the other officers that participated in the arrest and beating. So the basis for the judge setting aside the jury's verdict, as I understand it, is that Grimes' injuries are de minimis. That's really the basis for the judgment, not understanding the verdict, though, right? Judge, that's where I wanted to start. I don't actually agree with that. So there is language from which I think I understand why the plaintiff read the order that way. But I read Judge Huck in his oral statements as well as his written order to be saying two different things, or three different things. First, what's your honor saying? And so to the extent that the you would agree with me then that just by virtue of the fact that the injuries are de minimis, that would not be a basis to set aside the jury's verdict? Yes, your honor. To the extent that you read Judge Huck to have said that Grimes only sustained de minimis injuries as a result of a post-arrest beating, we agree with what your honor just said. I wanted to commend you for that, because a lot of times we get briefs on appeal that are still arguing something that was an error by the district court. And I commend you for not trying to affirm it on that ground. Thank you, Judge. I kind of read Judge Huck, that was the main ground. But nonetheless, you can try to affirm it for any reason. And so I commend you on not trying to do that, because that's not what the law is after you're fully arrested, and so forth. That's exactly right, Judge. Under Hadley. So you really, and I guess it doesn't really matter what all he says. But so the question is, is the evidence sufficient to show the officers were there? Sure. And so we then, we left off with Hearn, who, as your honor said, if we were allowing the jury to synthesize the testimony, which we must, and the jury could reasonably have found that Grimes lied, that her heart actually got there prior to the beating starting and not during the middle or at the end of it. You still have the problem that Franks and Talashe arrived 30 to 90 seconds after that. And it's not disputed here that there's multiple cars on scene, that there's multiple officers on scene. And so it's speculation to say that those officers, even if we draw every reasonable inference and say that the beating could still have been going on when they arrived, to say that these officers who came in to a crowded scene with a suspect on the ground, with multiple other vehicles, that they saw it and not only saw it, but that they had sufficient time to intervene and failed to do so. So for Franks and Talashe, I would submit that they're in an even stronger position than Hearn. I see that my time is out. So if there's no other questions, I would ask that Your Honors affirm the judgment of the district court. Thank you, Mr. Marcet. Mr. Ben Ezra, you've reserved some time for rebuttal. Thank you very much, Your Honors. Turning first to the issue of Franks, Talashe, and Hearn, Grimes argued in his reply brief that there was another basis, in addition to their admissions, for which those officers could be placed, well, specifically with Franks and Talashe, with how those officers could be placed at the scene of the beating. Specifically, although the defendants and their witnesses testified that an unnamed, unknown number of groups accompanied by officers Suarez and McVean, federal officers accompanied by officers Suarez and McVean participated in the arrest and then disappeared from the arrest but were never reflected in any arrest report, Grimes pointed to the two different arrest reports that were the complete universe of officers who participated in the arrest. Hart admitted during cross-examination that when Grimes surrendered to federal officers, so, sorry, Hart admitted during cross-examination that he had previously filed a sworn declaration with the court that Grimes had surrendered to federal officers that were members of his team, the members of his team comprised of the four appellees here and the six defendants who are in this case. So, if Hearn is in the cart with Hart and the remaining six appellees are not at the scene of the arrest and Rott beats Grimes over the head, he's the first one to initiate the beating, and other officers are standing around Grimes and join in, there are only two officers that can fit into that category and those are Franks and Talashe. And based on that, in addition to Franks, Talashe, and Hearn's admissions, the jury could have concluded that Franks and Talashe must have been the officers that joined in Rott's beating. Additionally, plaintiff's own case, sorry, appellee's own case law including Burley versus Gagaki indicates that once Grimes was able to identify Rott as his initial assailant and once Grimes was able to point at Rott's arrest report in which Rott took credit for arresting Grimes, the jury could infer from Rott's listing of his team members on his arrest report that those team members were there, were present at the arrest. Specifically in Burley, federal officers engage in a search of a home. Those federal officers wore masks. At trial, one of the plaintiffs identified the voices of one of those federal officers as having belonged to one of the officers that was present at the home during the time period in which the excessive force alleged in that case was occurring. The court found that that plaintiff's testimony was sufficient to, needed to be credited and was sufficient to prevent a judgment as a matter of law as to the officer whose voice the plaintiff recognized, and additionally, as to the officer's team members who the jury could infer were present as a member of that officer's team during the search. The same is true here. There were multiple, then three bases by which all of the appellees are placed on the scene of the arrest. There were admissions, the Rott report, and by process of elimination, Franks and Tallach were the only members of Hart's team who could have joined in Rott with his beating. If your honors have no further questions on that issue, I'll turn to one final comment. The appellee's case law in the United States v. Chitwood stands for the proposition that this court may affirm on any basis where doing so would not require the finding of additional facts by the fact finder. And your honors are correct that the core of, the core of the judge's, the district court's ruling was that there were, the general view was justified because there was de minimis injuries. If you look at appendix volume three at page 46, at about line 24, the judge ruled he, he being Grimes, may well have been taken advantage of on that occasion. I have my view on that. But in looking at, I think objectively at the actual damages that did not rise to above de minimis, the district court concluded that a beating may have occurred. His ruling was based on de minimis damages. And my time has expired unless you get, your honors have any additional questions. I thank you for your time. All right. We have your argument, Mr. Ben-Ezra and Mr. Marsad. Thank you. Thank you, your honors.